FILED
94 AUG 11 PM 1:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
AUG 1 1 1994

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| MYRA S. ROBERTS, et al., | ) | |
| Plaintiffs, | ) | |
| vs. | ) | CIVIL ACTION NUMBER |
| BAUSCH & LOMB, INC., et al., | ) | 94-C-1144-W |
| Defendants. | ) | |

## MEMORANDUM OF OPINION DENYING MOTIONS

Defendant Bausch & Lomb, Inc. ("B&L") has moved to dismiss plaintiffs' claims under the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1962 et seq. ("RICO"), and to dismiss their state claims on preemption grounds. B&L seeks in the alternative to transfer this case to the Western District of New York, pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, the motions are due to be denied, separately and severally.

I.

In this putative class action, plaintiffs Myra Roberts, Patricia R. Green, James Parker, Craig Avila, Tabetha Miller and Deborah H. Harris claim that B&L fraudulently markets and prices its three lines of disposable soft contact lenses (See Quence 2,

Medalist, and Optima FW). Plaintiffs maintain, and B&L concedes, that while these three lines are substantially identical, they are marketed and priced differently. The named plaintiffs are citizens of Alabama, Georgia, Massachusetts, and California. B&L is headquartered in the Western District of New York at Rochester, New York.

Plaintiffs have voluntarily dismissed, without prejudice, their claims against the individual officers of B&L, as well as their claims under the Lanham Act, 15 U.S.C. § 1125(a).

II.

B&L contends that plaintiffs' RICO claims must be dismissed because the alleged fraud is not pled with specificity, there is no allegation that plaintiffs were injured by the use or investment of racketeering income, and plaintiffs cannot state a claim for RICO conspiracy.

A.

In their complaint, plaintiffs allege:

> The Optima model is marketed and sold as a lens which can last up to one year and is priced at approximately sixty to seventy dollars ($60.00 - $70.00) per pair. The Medalist model is marketed and sold as a lens which is safe and suitable for use for one to three months, at which time it is to be disposed. It sells for approximately ninety dollars ($90.00) for twelve pair. The See Quence 2 model is

2

>marketed and sold as a lens which is only safe and useful for one to two weeks and its price is about eighty dollars ($80.00) for twelve pair. Defendants thus sell the identical pair of lens for $6.66 (See Quence 2) or $70.00 (Optima), without informing the consumer that it is the identical lens. These lenses are exactly the same lens and all are safe and suitable for at least up to one year.
>
>Each model is advertised in the media and represented by defendants as being different lenses which are only appropriate for use according to the literature produced by defendants. No advertising or literature indicates that these lenses are the exact same. The lenses are differently labeled, named and identified as being alternatively, a "frequent wear lens, a disposable and planned replacement lens or a disposable lens", suggesting that the lenses have different characteristics or qualities. Consumers are instructed by the defendants' literature and their agents that the lenses should be disposed of and replaced on the time schedule set forth by the defendants, thereby intimating that any other use would be unsafe and dangerous.
>
>Throughout the class period and to this very day, defendants continue to deceptively advertise, market and sell identical lenses as if they were of differing quality, grade or value.

Pls.' Compl. ¶¶ 18-20.  Plaintiffs also allege:

>Defendants have committed the following predicate acts:
>
>(a) By devising and putting into motion its fraudulent schemes and using the United States Mail to deliver literature to plaintiffs, class members and retailers (such as optometrists).

3

    (b) By using telephonic means of communication in interstate commerce to verify and or fill plaintiffs' orders.

    (c) By using the United States Mail to send advertising, product information and description as well as product to the plaintiffs and class members (including print advertisements in magazines), and bills for their products.

Id. at ¶ 32.

  The complaint gives sufficient notice to B&L of plaintiffs' RICO claim so that it may adequately respond to the allegations and prepare its defense. Bank of America National Trust & Savings Ass'n. v. Touche Ross & Co., 782 F.2d 966 (11th Cir. 1986). The particulars of the alleged fraud are described, the alleged time frame is disclosed, and the predicate acts are set forth. In the absence of discovery, this notice is all that plaintiffs reasonably can be expected to plead at the complaint stage.

### B.

  To establish a RICO violation, plaintiffs must plead and prove that B&L used or invested income received from a pattern of racketeering activity in the "operation of [an] enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a).

4

In Paragraphs 28 and 31 of the complaint, plaintiffs allege:

> Defendant B&L is the enterprise through which the illegal activities are being conducted. It has devised, set in motion and brought to fruition millions of fraudulent schemes, each of which has defrauded one or more persons. Defendant B&L was a perpetrator of the predicated [sic] acts herein and it received the income directly or indirectly from the pattern of racketeering activity in which it participated as a principal. B&L used the income in the operation of its business which affected interstate commerce.
>
> Plaintiffs are all members of the class of victims of said fraudulent scheme in that they have purchased B&L's contact lenses, either at an inflated, manipulated price or on a frequent and regular basis even though such purchase would not have been necessary were it not for defendant's fraud.

Giving to the complaint the liberal reading to which it is entitled, plaintiffs have alleged that by investing the tainted income back into the enterprise, B&L was able to guarantee the continued operation of its unlawful scheme. They have further alleged that because of the continued operation of the scheme, they purchased the Optima and Medalist lenses and thereby suffered damages. Thus, the complaint sufficiently alleges injury caused by the use or investment of racketeering funds. In re Sahlen & Associates, 773 F. Supp. 342, 367 (S.D. Fla. 1991).

5

C.

B&L's contention that for RICO purposes, a corporation cannot conspire with its own employees is belied by <u>United States v. Hartley</u>, 678 F.2d 961, 970-72 (11th Cir. 1982). The conspiracy allegations of plaintiffs' complaint are sufficient to withstand a motion to dismiss - particularly where, as here, the discovery process is in its infancy stage.

III.

B&L argues that plaintiffs' common law claims are preempted by the Medical Device Amendments of 1976, 21 U.S.C. § 360(C) et seq. ("MDA"). Under MDA, contact lenses are classified as Class III medical devices, which must receive premarket approval before they may be distributed to the general public. The contact lenses at issue in this lawsuit have received the premarket approval of the Food and Drugs Administration ("FDA"). Thus, in B&L's view, MDA expressly preempts all state law requirements which might otherwise apply to the design, manufacture, and distribution of these lenses. 21 U.S.C. § 360(k)(a).[1]

---

[1] This statute provides:

> (a) General Rule. Except as provided in subsection (b) of this section, no state or political subdivision of a state may establish or continue in effect with respect to a device intended for human use any requirement:
>
> > (1) which is different from, or in addition to, any requirement applicable under this chapter and

What B&L's argument overlooks is that this is not a products liability case. Plaintiffs do not complain about the design, manufacture, labeling, or packaging of B&L's contact lenses. Rather, plaintiffs' lawsuit relates to the marketing and pricing of the lenses.

The touchstone of the preemption analysis is whether Congress has manifested a clear purpose to preempt state laws relating to the marketing and pricing of contact lenses. See Cipollone v. Liggett Group, 112 S. Ct. 2608, 2617 (1992). Preemption may not be implied in this case. See Myrick v. Freuhauf Corp., 13 F.3d 1516 (11th Cir. 1994).

---

1/Continued

> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

Clearly, Congress did not intend to preempt all state laws relating in any way to Class III medical devices by its enactment of MDA. Several issues are simply unaddressed by the narrow preemption language relied on by B&L - among them, marketing and pricing.

Moreover, the agency interpretation indicates that § 521(a) does not preempt state or local requirements relating to unfair trade practices in which the requirements are not limited to Class III medical devices. 21 C.F.R. § 808.1. The fraud and misrepresentation common and statutory laws of the various states are certainly not limited to Class III medical devices.

Plaintiffs' common law claims are not preempted by MDA.

IV.

B&L alternately seeks the transfer of this case to the Western District of New York "for the convenience of the parties and witnesses." 28 U.S.C. § 1404(a). In passing on the motion to transfer, the Court must consider both the private interests and the public interests.

A.

As shown earlier, the named plaintiffs are domiciled in four different states. With the exception of the Massachusetts domicile of one of them, all live nearer to the Northern District

of Alabama than the Western District of New York. Plaintiffs have not identified their prospective witnesses at this early stage of the litigation, but it is a fair guess that these witnesses are widely scattered throughout the United States. B&L has identified four witnesses whom it may call to testify on the advertising and marketing aspects of the contact lenses at issue. These witnesses, together with B&L's officers and employees, are all located in the Western District of New York.

Much of the documentary and other tangible evidence is located in the Western District of New York. But a considerable volume of evidence relevant to the RICO claim is also in places outside the state of New York.

The plaintiffs' unanimous choice of forum is the Northern District of Alabama.

B.

Plaintiffs' main claim - the RICO claim - is governed by federal law, which hopefully is the same in the Northern District of Alabama as in the Western District of New York. More likely than not, the laws of the various states will apply to non-federal claims of the plaintiff. For aught that appears, the Western District of New York has no greater expertise than the Northern District of Alabama in construing and applying the laws of states

9

other than New York. Civil cases are brought to trial in the Northern District of Alabama more speedily than in the Western District of New York.

C.

"The federal courts traditionally have accorded a plaintiff's choice of forum considerable deference. Thus, in the usual motion for transfer under § 1404(a), the burden is on the movant to establish that the suggested forum is more convenient." In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989) (citations omitted). B&L has not carried its burden.

To accept B&L's position, the Court would necessarily embrace the concept that virtually every putative nationwide class action brought in a federal court should be transferred to the district in which the defendant corporation resides. That concept, taken to its logical conclusion would mean, for example, that the gargantuan breast implant litigation with over 9,000 plaintiffs should have been transferred to the federal district in Ohio in which the principal defendant Dow-Corning is domiciled, rather than the Northern District of Alabama, in which none of the defendants are domiciled.[2] This judge is unwilling to make that giant leap.

---

[2] See In re Silicone Gel Breast Implant, 837 F. Supp. 1123 (N.D. Ala. 1993), 837 F. Supp. 1128 (N.D. Ala. 1993), 1994 WL 114580 (N.D. Ala. 1994).

10

For the reasons stated herein, B&L's motions are **DENIED**.

DONE this \_\_\_10th\_\_\_ day of August, 1994.

_____
UNITED STATES DISTRICT JUDGE
U. W. CLEMON